WANDA LOUISE SMITH, by next friend, Appellant, v. O. E. MABREY, Defendant, and THE CITY OF CAPE GIRARDEAU.—154 S. W. (2d) 770.

Division Two, October 25, 1941.

*Frank Lowry* for appellant.

*R. B. Olivér, III,* for repondent.

WESTHUES, C.—James H. Smith filed this suit as the natural guardian of Wanda Louise Smith, his minor daughter, to recover $20,000 in damages from the defendant city for personal injuries sustained by Wanda when she was struck by a motor car driven by defendant Mabrey. At the close of plaintiff's evidence the trial court sustained a demurrer filed by the city, and from the judgment entered plaintiff appealed.

Plaintiff's theory of the city's liability is, that the city failed to maintain a reasonably safe sidewalk on the west side of North Main street, which, it is alleged, forced Wanda to attempt to cross the street to reach a sidewalk on the east side of North Main street, at which time she was struck by the car. Plaintiff argues that the negligence of the city in failing to maintain a safe sidewalk concurred with the negligence of the defendant Mabrey in producing the injury and therefore the city must respond in damages for such injuries. The evidence disclosed that plaintiff, Wanda, was struck at about noon on March 5, 1937, while crossing North Main street, from west to east, near the intersection of Pearl and North Main streets. Plaintiff was seven years old at the time. She and a companion had attended the Washington school located about two blocks west of North Main street, and having been dismissed for the noon hour were on their way home for lunch. They walked east on a sidewalk on the north side of Pearl street and when they reached North Main street they desired to go north to their home. The evidence was that there was no improved sidewalk on the west side of Main street immediately north of Pearl street, which point is referred to in the evidence as being in front of Jones' store. On the east side of that street there was an improved sidewalk. Wanda's injuries were such that she was not able to testify at the trial. Her companion, Martha Fern Kirkpatrick, age seven, testified as follows:

"Q. Now tell us, Martha, why didn't you and Wanda walk up the sidewalk along there by Mr. Jones's store? A. It was muddy . . .

"We came along the sidewalk until we got in front of Mr. Jones'. Store and Wanda ▇▇▇ went on out into the street, Main Street, when the car hit her. We didn't go up the side of the street that Jones' store was on. . . .

"Q. Tell the jury why you didn't walk up the side of Main Street that Mr. Jones' store was on? A. Because there wasn't no sidewalk there.

"Q. Was there anything else the matter? A. Yes.

"Q. What else was the matter? A. There was water there, puddles of water.

"Q. There was a sidewalk across Main Street over by the shoe factory? A. Yes, sir.

"Q. Was Wanda trying to get over there to that sidewalk, or do you know? A. Yes, she was."

On cross-examination she testified:

"Wanda and I usually went to school and back together. We usually went in the car but we walked home at noon. I would go down the steps and come along by Mr. Jones' store and then go across to the sidewalk by the shoe factory whether it was muddy or not. I would go on over to the sidewalk. The day Wanda was hurt there were no cars to keep me from going straight across from Jones' store to the shoe factory sidewalk."

The shoe factory referred to in the evidence was located on the east side of North Main street to the north of Pearl street. About fifteen hundred employees of the factory had not been dismissed from their work at the time of the accident. Photographs and the oral evidence of plaintiff disclosed that the sidewalk space in front of Jones' store was uneven and unimproved.

Appellant and respondent briefed the question of the city's duties with reference to maintaining sidewalks, respondent urging that the city had never improved that part of the street in question ordinarily used for sidewalk purposes, and was therefore not liable for defects therein. But let us concede for the sake of argument only that it was the duty of the city to maintain a reasonably safe walk at the point in question and that the walk as it existed at the time was not reasonably safe. Even so conceding the question remains, was the defective condition a proximate cause of plaintiff's injuries? Two or more persons may be guilty of negligent acts in producing an injury so as to render each and all liable. [45 C. J. 920, sec. 485.] But is not the alleged negligence of the city in this case too remote to be considered a contributing cause so as to render the city liable? We think so. Plaintiff in support of her contention cited the following cases: Lindman v. Kansas City, 308 Mo. 161, 271 S. W. 516; Shafir v. Carroll, 309 Mo. 458, 274 S. W. 755 (two cases); Strother v. Sieben, 220 Mo. App. 1027, 282 S. W. 502; Daneschocky v. Sieben, 282 S. W. 506; Daneschocky v. Sieben, 195 Mo. App. 470, 193 S. W. 966; Adelman v. Altman, 209 Mo. App. 583, 240 S. W. 272; Strother v. Carroll, 287 S. W. 310. All of these cases arose out of the same accident. A contractor preparing to erect a building had placed building material in the street and had removed the sidewalk so as

to obstruct all the sidewalk and a portion of the street at that point. An ordinance of Kansas City required contractors in such cases to construct a temporary walk around the portion of the street obstructed. The contractor had failed to comply with that ordinance. A number of young people, while on their way home from a party, reached the obstruction about midnight. They attempted to pass around it by walking in the street. While thus walking around the obstruction a car driven at an excessive rate of speed struck the party killing four and seriously injuring others. This court en banc in Lindman v. Kansas City, supra, by a vote of four to three, held the city liable on the theory that the obstruction of the street by the building material was unlawful in that it covered more of the street than was permitted by the ordinance and also that a temporary sidewalk was not provided. The opinion held that the city had had due notice in time to have remedied the situation. The other cases ruled the same question. This court in Stollhans v. City of St. Louis, 343 Mo. 467, 121 S. W. (2d) 808, Division One, followed the ruling in the above case. In this Stollhans case sidewalks had been constructed on both sides of the street. At the time plaintiff was struck by a car while walking in the street, the sidewalks on both sides were covered with mud about two and one-half feet deep. Rains and wet weather had caused dirt to slip or slide upon the sidewalk from adjoining embankments. This condition had existed for about a year. It was held that the city had had sufficient notice of the condition to have removed the obstruction. In all of the above cases liability was sustained on the theory that the negligence of the city was a concurrent proximate cause of the injury. It is a well settled rule of law that liability for negligence cannot be sustained unless there is a causal connection between the negligence and the injury. The negligence must be a proximate cause. [45 C. J. 905, sec. 480.] In the case before us we do not have an unlawful obstruction in the street. The only negligence with which the city was charged was, that it failed to construct a sidewalk at the point in question and the passageway or footpath, so to speak, was muddy and due to weather conditions puddles of water were present. Because of that condition plaintiff chose to cross the street for the purpose of utilizing a concrete walk, and while doing so was struck by a car. We are of the opinion that the alleged negligence of the city had no direct connection with the collision and think that such negligence was only incidental. In 45 C. J. 941, sec. 491, we read the following:

"A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, and efficient cause of the injury,

even though such injury would not have happened but for such condition or occasion. If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause.''

We have discovered a number of cases from other jurisdictions directly in point which express our idea of the law. The Supreme Court of Iowa in Jones v. Ft. Dodge, 185 Iowa, 600, 171 N. W. 16, held the city not liable where a boy was struck by a car. The boy was walking in the street because the sidewalk had been cut off while a building was being reconstructed. The court said:

''The sudden appearance of the automobile and the disregard of its driver of the safety of the decedent was clearly an active and efficient cause of the injury. It was the intervention of an independent event, involving human responsibility. Except for this intervening event, the accident could not have happened. It will serve no useful purpose to enter upon a discussion of the question of proximate cause. The question is often a difficult one, and the books are full of discussion thereon. We think, however, that the question as presented herein is not a doubtful one, and that the act of the automobile driver must be deemed the independent and efficient and proximate cause of the accident, and that the defendant city is in no manner responsible therefor.''

Storey v. New York, 29 App. Div. 316, 51 N. Y. Supp. 580, is a similar case. There a boy was struck by a wagon as he passed around a mound of earth which obstructed the sidewalk. An excavation had been made in the sidewalk. In holding the city not liable the court said:

''It is evident that the mound, of itself, did not produce the injuries, but that the immediate cause was the butcher's cart, which ran over the boy just as he had emerged on the track after passing around the pile of earth. It is insisted, however, that there were two causes concurring—one the earth, which obstructed the line of vision of both the boy and the driver, and the other the cart, which ran over the boy. That there may be more than one proximate cause, and that more than one defendant can be held for negligence resulting in injury, is certain, both in reason and authority . . . So, in the case at bar, if it were claimed that, while passing around the mound of earth, the plaintiff tripped over it, and was thrown upon the track, and there injured by the cart, or if, in a supposable case, the driver of the cart, by striking the mound of earth without fault on his part, had been thrown out, and injured by another passing wagon, then, upon proof that it was negligence on the part of the city to permit the mound of earth to remain in the street, we would have a case where the proximate cause of the injury was the negligence of the city.''

For another case in point see Setter v. Maysville, 114 Ky. 60, 69

S. W. 1074. To hold the respondent city liable in this case would be extending to a breaking point the rule of law requiring a negligent act to be a proximate cause of an injury before liability attaches. We do not mean, by this opinion, to overrule the Missouri cases above cited. But the rule in question certainly cannot be extended farther than was done by those decisions. This would be necessary to hold the respondent city liable in this case.

The judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.